Good morning, ladies and gentlemen. Our first case for argument this morning is Ashley W. v. Holcomb. Mr. Fisher. Thank you, Judge Easterbrook, and may it please the Court. The Indiana Department of Child Services works every day to prevent child abuse and neglect with families in crisis with complex needs needing local solutions. Plaintiffs demand systemic changes by a judicial decree, but federal courts are not substitute child welfare agencies. The Court must dismiss this case on jurisdictional grounds for one of two reasons. Either the relief that the plaintiffs seek would interfere with or override judicial decrees of state courts where Rooker-Feldman or Younger or Nicole K. would apply, or they have not identified any redress that's sufficient to satisfy Article III standing requirements. The plaintiffs have repeatedly, I think, tried to disclaim that they want any relief that would actually interfere with the ongoing Chins proceedings. But that begs the question, what's left? What is it that they want that could actually redress the harms of the named plaintiffs to satisfy Article III? They say, in effect, trust us, we will eventually identify an adequate and appropriate remedy. But that approach has led to too many out-of-control federal court decrees, even in child welfare cases. Vague invocations of equity are not enough to get past this stage of the case. Now, I think to ensure a viable claim here, the plaintiffs, in effect, have to articulate the following three things. Lawful relief, not barred by Rooker-Feldman or abstention doctrine. An explanation of concrete redress to them, that is, how that lawful relief actually benefits them. And then third, a valid merits theory. Without good answers to all three of these, and the plaintiffs don't provide any, the case must be dismissed. So Mr. Fisher, I do understand the plaintiffs, maybe I'm reading something into this, but such as the four that seem to be left in the case at this point. That is an action by the state court. One can't undo that. But I thought they were stepping back and saying that it's actually the Department of Children's Services policies and procedures that they're looking to change, which are the statewide things, maybe new evaluations, more families, opportunities, a wider range of potential placement locations. And whatever else you may say about that, that's not Rooker-Feldman or abstention. It's just a typical old, just like we'd have with the prison system, if they didn't have adequate medical care or they didn't have, if they didn't bother to heat the prison or A couple of responses. First, I want to point out, based on the records in this case, we're now down to two plaintiffs. Two have since aged out since the briefing. I wondered about that. Actually, there are a couple who were 17, so they've now turned 18. I think the only two left are Logan S. and Sarah O. Now with respect to the claim for systemic change, more placement options, et cetera, the things that you're on are outlined. What about Betty W.? I thought Betty W. was only eight years old. Yes, I think that there has been a change of status there. I don't think that Betty W. was included as a plaintiff, still named plaintiff, because of subsequent decrees. I don't necessarily want to get into the details because so much of this is protected by confidentiality. Of course. So I think that that's But you're representing that we have Sarah O. and Logan S. still. That's right. That's right. Yeah. But a couple of things. I think, first of all, the types of options that the plaintiffs seem to want and that you've described, I think we have to distinguish it from the prisoner context, precisely because in this case, any type of placement relief, services relief that the plaintiffs might want for these plaintiffs can be had in the context of the Chin's proceedings if the best interests of the child require it. But here's where I'm just trying to say, in the Chin's proceedings, as I understand it, the Chin's judges have to apply a particular body of law. They can't issue decrees against the department telling it to change its policies. Their powers are limited, right? Well, but they can order relief to a plaintiff or to a Chin's proceeding child that would implicate those policies. That's the point. Something contrary to the policies, if the policies are defective? Right. So if DCS comes in and says, we have a policy of only placing with relatives come hell or high water. Well, of course, the Chin's court can say, no, that's not in the best interests of the child. We have to do something else. Even if an Indiana statute said that? Well, I think, well, at that point, I think we would be talking about constitutional claims potentially, in which case, yes, of course, the Chin's court can take into account the constitutional demands. But the inability to get class-wide relief, of course, is not a problem. That's not something that the plaintiffs are entitled to. So we have no class. I mean, I think you're right about that. There's no class certification here. So we have individual claims before us. True enough. But let's remember what the plaintiffs keep saying, which is that they want systemic relief. Now, when I see that, what I read is, they want a class certification with class-wide relief. What's interesting is that they seem, in many respects, to disclaim any interest in doing anything for these particular plaintiffs. They want things that are going to happen that are going to benefit others. You've got children here who are where they are as a result of a Chin's court order. And the plaintiffs say, well, we don't have any objection to the Chin's court order in that regard. We don't think that there was anything erroneous about the best interests of the child determinations in those contexts. One wonders. Are they saying they don't object? I wonder, are they saying that the Chin's court's limitations don't allow them to go any further? I mean, again, I understand them to be arguing that it's limitations in the Chin's process itself that they're going after. I think it's more than that. And I think that they are saying that. But that's only with respect to the inability to get class-wide relief. What I hear them saying is, it doesn't matter what's going on with our named individual plaintiffs, because we're not interested in their cases. Well, because we're not dissatisfied. We'll ask them that. Well, of course. Of course. And I think that's critical. Because if they are interested in their cases, the question is, OK, to what end? And if they say, well, it's to the end of getting a different placement or a different service for Logan or Sarah, OK, then we're right back into Younger and potentially Rooker-Feldman. They want to be out of Rooker-Feldman and Younger. And they seem to acknowledge that that's a problem for some forms of relief. But then they run smack into Article III. What is the redress that would allow this case to go forward that federal courts could plausibly satisfy? And they haven't identified anything that would benefit these plaintiffs. Mr. Fisher, I think we're all used to the idea of ex parte Young injunctions on constitutional grounds against state officials. What I'm struggling with, and I hope both counsel will be able to address for me, is at least some of the forms of relief being sought here seem to be, order the DCS officials to go into state courts and take certain positions. Is that? Honestly, I think plaintiff's counsel is better equipped to answer that. I don't really know what they are. If that is what they are seeking, your response? Well, I think that that obviously interferes in a Younger's. I'm not sure if there's an ex parte Young issue. I mean, I would certainly like to explore the possibility that there are other procedural barriers to that. But I think principally with respect to what's before the court right now, that obviously gets into the Younger and Nicole Kaye abstention issues. That's obviously interfering with the state court proceeding where this court has said, in Milstein and in Nicole Kaye, that federal courts don't belong. Well, just before I finish, I don't want to belabor time up here, but before I finish, I do want to touch on the merits just briefly. Let me ask you, though, about that. Neither party, to my knowledge, maybe I should look again, cited Yamaha Motor against Calhoun in their briefs. But that's the Supreme Court's decision about 1292B appeals. And the order comes up before the court, but you can't go beyond the scope of the order. I don't see in this order, I've looked at it very carefully several times, I don't see anything about the merits. The district court certified the Younger abstention point, and I don't have any problem with the What I don't see is any certificate, any order that encompasses the merits. Yeah, the same order that addresses abstention, Rooker-Feldman, addresses the merits. I don't think so. Entry denying pending motions and certifying order for interlocutory appeal, and as I look at this order. Well, that's the certification. So there are a couple of different orders, and maybe that's the confusion. Right, so what motion for certification, and so he quotes 1292B, and he says, all four of those criteria are met here, first whether the court should abstain in this case turns on the application of Younger abstention. That's a legal question, and then it goes just through, it's controlling, blah, blah, blah. But under the Yamaha standard, I don't see the merits in that order. I think we've got two different orders going on. That order is certifying, it's going through the 1292B factors with respect to abstention, Rooker-Feldman, but it is certifying the prior order where it denied the Rooker-Feldman. Where do you see that language? Well, I don't have the order right in front of me, but I'll look at it. I think that's what the court is doing, and that's why the merits are part of it. I don't think so. I think you're, he's saying the question. He has not certified the whole case. No, he certified the prior order. This is not the order that itself denies Rooker-Feldman and Younger. That came in a prior order, and this is the order that is certifying that prior order. I see at the end of the 29th of September order, the motion is granted with respect to defendant's request to certify the court's previous order for appeal. Right, that's the one. Is that what you're reading? That's what I'm talking about, yeah. And that order is order number 105 on the docket. Okay. And if you go through order number 105, there is a brief statement that plaintiffs have about abstention and Rooker-Feldman and so forth. It is presented there, and I think what the court addressed was our motion to dismiss on these merits grounds. Yeah, that's what order, that's what number 105 is about, and the order that's certified is number 105. Right, right. Yeah. At least we know which is which. Okay. Well, so, and I think on the merits, as we've cited case after case, saying that the standard is whether the state knowingly or with suspicion of potential for child abuse placed a child in harm's way, and that's not any, the plaintiffs just don't make out any claim that fits those parameters. Mr. Fisher, let me, I guess this is a little bit of merits, a little bit of jurisdiction, but in thinking about these problems, there's a much higher volume of litigation concerning detainees and prisoners and so on, but, and with prisoners, it's much easier to distinguish between the order that places a person in the state's custody and then conditions of that custody. Right. So, and you're familiar with that law, and here, let's suppose just a child's advocate says, look, the state court has been, has issued this placement order. Maybe it's a group home, maybe it's a foster care family, but this child is not getting the health care she needs. Is that something where a federal court could step in or not? I don't think so. I think because you're, again, talking about essentially services, and what is the services? And that's within the scope of the CHIMS order. Precisely. Precisely. Right. It's very, very different from a commitment to the Department of Correction. Absolutely it is, because, of course, these CHIMS proceedings, we're talking about juveniles, we're talking about children that need attention from the system, and it is a back and forth between the Department of Child Services and the courts and the children's advocates. They're all involved in this. Every six months, there's a hearing, a review hearing of some kind. Every year, there's a placement review hearing. This is an open case until the child is restored to permanency, either through adoption or through back to the parents. Along those lines, Mr. Fisher, could you address, as a district judge, I was kind of brought up in the broad lessons from the Seventh Circuit about Rooker-Feldman, and then the Supreme Because these cases are open, how does Rooker-Feldman apply, since at one level, every order is interlocutory, but every order is also an injunction? Right. I think that's precisely the last point. Every order is, in and of itself, is final, and it is an injunction, effectively. I think that this court has indicated, and the case escapes me at the moment, but that interlocutory orders that have that sort of final capacity to them, especially in a case where there isn't going to be finality until the end, you have to treat that as a final order. And candidly, I mean, at some level, it gets philosophical, right? Where does the current order end, and then the ongoing proceeding begin? So is it Younger? Is it Rooker-Feldman? And maybe it doesn't matter, ultimately, but the point is that even if you want to divide the world in two, between what's past and what's future, one of those two doctrines is going to cover all of this. Okay.  Thank you. Certainly, Mr. Fischer. Ms. Bocan. Thank you, Your Honors. Ms. Bocan, you heard a lot of questions bearing on jurisdiction, and I would like to ask you two particular. Do you agree with Mr. Fischer that there are effectively only two plaintiffs left? No, Your Honor. So, plaintiffs should note first that there are 10 named plaintiffs in this proceeding. All were involved in the foster care system and were in a special relationship with the state when plaintiffs initiated this litigation on June 25, 2019. I'm not asking how many there were when the case began. I'm asking how many plaintiffs have live claims now. Mr. Fischer says two. If you say some other number, we want to hear your rationale. So certainly, Sarah O. and Logan S. are still involved in the foster care system and under the age of 18. Braxton F. actually just turned 18 about two weeks ago, and Desmond C. also aged out of the foster care system, both without DCS ever finding a permanent placement for them. Six of the plaintiff children, I actually, with co-counsel Betty W., I am not sure if her adoption is official yet, but five of the children have been adopted. That said, Your Honor, defendants, though they have threatened it, have never filed a motion to remove the children that have been adopted in the lower district court. Maybe I need to ask the question in another way. Are you seeking any concrete relief for children who have been adopted? Your Honor, we're not seeking concrete relief for the... Okay. Are you seeking any concrete relief for people who are already 18 or greater? We're seeking relief, Your Honor, for the children who are still a part of the cases. Could you address my question? Are you seeking concrete relief for children 18 or greater? Your Honor, the relief that we're seeking is against the Department of Child Services. The answer to my question is yes or no. You can give one of those answers, and then you can explain. But please don't filibuster. Sure. No, Your Honor. And, Your Honor, what I would say, though, is that plaintiffs... Well, then please answer yes or no, and then explain. Sure. I said no, Your Honor. Okay. So we've got two unambiguous plaintiffs, not adopted, under 18. My jurisdictional-related question for them is what relief are you seeking for them in particular that would not be available from the state court in a CHINS proceeding? Sure, Your Honor. So the relief that we're seeking is a change to the way DCS administers its policies and procedures in particular. No, I really would like you to be concrete. What worries me is that much of the relief that it sounds like you're briefed, says you're seeking, is relief for people who are not yet in CHINS proceedings. The two remaining plaintiffs, indeed all ten plaintiffs at the beginning, were in CHINS proceedings. So it would really help me if you could concentrate on telling me what relief are you seeking that is beneficial for children in CHINS proceedings but not available from the judges in the CHINS proceedings. That's what I'm trying to get you to concentrate. Sure, Your Honor. So it might be easiest to use Sarah O. as an example. So Sarah O. was placed in a psychiatric ward for approximately two and a half years. She was placed there by an order of the CHINS court, and DCS placed her there. In September of 2018, her doctors and everyone overseeing her in the psychiatric ward told her DCS caseworker that she had met her treatment goals there and that she needed to be transferred to a least restrictive placement. DCS did not do so for more than six months because it couldn't find a placement for her. And this is the type of relief that we're seeking. So can I maybe follow up on Judge Easterbrook's question? I'm trying to imagine, take Sarah O. I mean, that's fine. She isn't, as I understand it, in the psychiatric ward anymore, and I don't know if you were to win, would Sarah O. and Logan S. immediately be entitled to a reevaluation? Would they be entitled to a new placement of some kind? Like what specifically might happen to them that's a good thing that you're trying to achieve by this litigation? And that the CHINS court can't order. Sure. So, again, the CHINS courts are limited by the options that DCS places before them. I understand that, but tell me the good thing that's going to happen to Sarah or Logan, whether, again, whether it's a process of a reevaluation under a better set of rules and regulations or limitations that the CHINS court has limited jurisdiction and can't – I mean, I'm just making things up. But, you know, what is it that will happen? Sure. So both Sarah O. and Logan S. are currently in congregate care facilities. Again, one of the requests for relief that plaintiffs are seeking is to enjoin DCS from keeping children in congregate care when least restrictive placements are available and appropriate for those children. And why can't the CHINS court provide that those two children should not be in congregate care? So the CHINS court is limited by the placements that DCS has available before it and by DCS's actions to actually move the children. So in Sarah O.'s case, the CHINS court actually did say that she needed to be moved to a least restrictive placement and that she was not in a least restrictive placement in that psychiatric ward, and it still took DCS more than six months to find her a placement. What you're saying is that the CHINS court can order this, did order this, and it took time for the defendants to comply. I'm really looking for something that would be concrete relief that the CHINS court can't order, not something that's difficult to achieve in the world and which, if ordered by a federal court, would be equally difficult to achieve. If there's no place available for her, that's true whether the state court or the federal court orders it. That's why I'm asking you to be concrete. What is it that you're seeking as concrete relief that the CHINS court can't order? Your Honor, we're seeking change to DCS. Look, we're seeking change. That's not concrete. It would really help me, at least, if you could be concrete. Sure, Your Honor. I believe, in our brief, we mentioned the relief and the harm that each of the named plaintiffs, all ten of the named plaintiffs, are seeking in this case. But a lot of that struck me as—I mean, it's terrible. There are some horrible facts in this case, but you are not, I assume because of jurisdictional and sovereign immunity limitations, you're not seeking retrospective relief. You're not seeking damages for horrible placements or the like. You have to be looking ahead to the future. And that's where Mr. Fisher, at least, is saying that you haven't identified what the CHINS court can't do that these children need,  Sure, and so to try to be more concrete here, what we're saying is that DCS needs to offer a broader array of services and placements that actually address the needs of the children in its care. Is there any way you can be concrete? Broader array of services that address children's needs. That's bureaucracy. It's what you put in a report hoping for a brighter tomorrow. But if you're thinking about what a federal court can do specifically, you need to articulate some precise relief and not an injunction full of aspirations. That's why I'm trying to get you to tell me what specifically can be done. Sure, Your Honor. So it's a little difficult to be specific without discussing the discovery that we have already started in this case and we're well into. But for example, and again discussing placement array, we have received a discovery that shows how many foster care placements there are in the state of Indiana. How many therapeutic foster homes there are in the state of Indiana. How many congregate care placements there are in the state of Indiana. So how, in your view, is the DCS supposed to increase the number of foster care homes for Indiana? Or how is it supposed to increase the services that it makes available for foster parents so that you don't wind up with, say, a disabled child not getting the services that he or she needs? So are you basically saying, Indiana, whether it's through more money or through more effort or through something, you just have to find more foster care homes? There are two things the state could do. One is it could offer much higher wages for the people to do this, much higher pay. Or it could go out and build its own home. Are you asking for either of those concrete actions? No, Your Honor, not specifically those concrete actions. But in terms of specifically offering services to individual children, as plaintiffs mentioned in our complaint, the DCS agency currently requires several layers of approval before a child can receive a service. And so, for example, in Desmond C.'s case, Desmond C., at the time, he was a 16-year-old boy who had gained significant weight while he had been in care with his foster family. He had cerebral palsy and severe autism and was not mobile. And his foster parents requested a lift to help get him up the stairs in the home because his bedroom was on the second floor. It took DCS, I believe it was over a year, to do this. And by the time DCS did it, the foster parents had put in their notice and he ended up in a nursing home. And so there are systemic issues with the way DCS implements its policies that affect individual children. The world is very challenging. There are all sorts of problems that have to be overcome. I am still looking for something concrete a federal court would do. A statement like, you have a six-week deadline for doing anything, any parent or foster parent request. That would be a concrete thing a federal court could do, which presumably a children's court would not. And yet I take it you probably wouldn't argue for that because the only thing most state bureaucracies can do in six weeks is say no. Saying yes always takes, and getting to yes, always takes longer than saying no. So you don't want something that would just induce them to say no all the time. Is there something, right, you can see my problem. What is it that in the terms of Rule 65 would be specific relief that a federal court could give, that a state court in chins can't, and that's not simply aspirational, do better? Sure, Your Honor. We don't think that our relief is simply aspirational or do better for the states. We think that a federal court has the power. So would you suggest a mandatory federal rule that you must act on all requests within six weeks? Yes or no? It has to be done in six weeks. No, you're not in favor of that. It's hard to answer, Your Honor. Exactly. And so that's why I could imagine enjoining DCS from using congregate care settings based on unavailability of foster care homes, but that's basically what I was saying before. You asking the state to go out there and by hook or by crook, you know, expand the number of foster care homes, this is, I mean, I have to say it's a complex process. You've got to find people willing to do this, and there's not an infinite supply of that. It's expensive. Maybe you have to pay them a little more just to induce them, but you could imagine saying, look, you know, if you only had 100 foster care homes in the entire state of Indiana, to be extreme about it, that's not running the program in good faith. And so maybe a federal court would be able to say you simply, you know, as we've said in some other cases, you have to be out there trying to do something. You can't just sit on your hands and say, well, life is hard. But injunctions are punishable by contempt. I mean, you have to be specific in an injunction, or you have not given people the due process to which they're entitled. Yes, Your Honor, so to address the first part of your question, one of our specific requests for relief actually is to enjoin DCS from placing children in congregate care when least restrictive placements are available and are appropriate for those children. And so we have other specific requests. But if they're available, why can't the Chins Court say move child X to this foster home? Well, again, Your Honor, because those homes may not be available, because DCS has not authorized a sufficient number of homes. And so, again, you're- So you have to be hypothesizing that capacity needs expanding, because available homes surely are exactly what the Chins Courts are using. Correct, Your Honor, and they're limited to available homes. And so if DCS is not- So we have on your list, we have capacity expansion. You seem to have rejected the six-week deadline, but maybe you would like a four-month deadline or something, something less than six months. Well, certainly. I'm sorry, Your Honor, I don't mean to interrupt. I'm just trying to come up with your list for you. Sure, and so, well, and speaking of deadlines, one of our requests for relief is that all children receive an evaluation and a placement evaluation within 72 hours of being placed in DCS care, which does not always happen at this point. Would that help the two plaintiffs that we still have? Are you imagining that they would be re-evaluated? We have also requested additional re-evaluations of children who are currently in care. The specific relief that- the relief that we're requesting that is most specific to the two plaintiffs who are still- who are under the care of DCS is additional and more frequent review of placement options for them, as both of these children, I believe one is 15 and one is now either 16 or 17, are also at danger of aging out of foster care without ever having a permanent placement. And so a one-year permanency review that DCS has to report to the JINS court is not enough. DCS should be doing more throughout the year to find permanent placements for these kids. Logan S. and Sarah O. might get every three months or something evaluation as opposed to every six months or every year. Correct, Your Honor, specifically because- Is that something the JINS court could order or is it beyond the JINS court's power? The JINS court is obligated to hold dispositional hearings every six months and permanency- I understand that, but my question is, would it be beyond the JINS court's power to order review every three months? That I don't know, Your Honor. I would have to look further into that. I hope you understand still where my problem is. I'm looking for things that the federal court could and potentially should order that the JINS court can't order. Yes, and again, our response is that the JINS court's orders are always limited to what DCS provides to them. And so another example of the relief we're requesting that we haven't touched on yet is for lower caseloads for caseworkers within DCS. Indiana did pass a law that requires lower caseloads, but we don't believe that that's actually being enforced. Isn't that something that the state courts can enforce? Your Honor, it's something that if a case was- And it's a question of state law? It's not- That a federal court should not be enjoining compliance with. Well, it's a Pennhurst problem here, actually. Exactly. I'm sorry. It's a Pennhurst problem, and if I can circle back, you want evaluation within 72 hours. Where does the 72-hour standard come from? The 72-hour standard, I believe that there are DCS policies that DCS is not following that require evaluation of children within a certain time frame. So it sounds like you're also asking the federal court, in essence, to order DCS to comply with its own policies and with state statutes. Yes, Your Honor. We're asking DCS to do more than that, though. We're asking DCS, as the children are in a special relationship with DCS, to protect these children from harm while in their care. And among those things, that's to follow DCS's own policies that DCS has written that it believes are necessary to follow in order to protect these children from harm. And when DCS doesn't do that- And would the federal court be doing that as a matter of federal constitutional law or state law? Of federal constitutional law, Your Honor. What federal constitutional law requires states to follow state laws? That's not the way that we've framed our complaint, Your Honor. What we're asking is for DCS to protect the children in its care from known or suspected harm while they are in the care of DCS. And that is a constitutional right under the 14th Amendment. The Seventh Circuit has adopted a modified deliberate indifference standard, and our position is that DCS, by failing to adhere even to its own guidelines in the way that the Department cares for children- Do you think that Pennhurst was decided incorrectly? What? I'm sorry? Do you think that Pennhurst was decided incorrectly? Your Honor, I'm not prepared to answer that question right now. I'm sorry. Thank you. Thank you, Ms. Bogan. Anything further, Mr. Fisher? Just a couple of points briefly, Your Honor. With respect to the discussion we were having about what's been certified and the discussion of the merits, I think if you look at the short appendix at 12, this is the document 105 Order Judge Easterbrook was referring to, and pages 12 and forward talk about the merits evaluations. Okay. Thank you. Judge Hamilton, you had asked about interlocutory orders in the Rooker-Feldman. Page 8 of our reply brief we cite this Court's decisions in Bauer v. Koster and Swartz v. Heartland Equine Rescue as holding that interlocutory orders can sometimes be subject to Rooker-Feldman. Now, with respect to what I understood to be the types of relief that the plaintiffs were talking about today, the placement of the child based on capacity or some greater need for capacity, Chin's Court can say, look, best interests of the child mean no congregate care setting, go find a residential facility or a home facility. A home, I guess is a better way to put it. That can be done by Chin's. These deadlines. You have to make a decision on this request. That can be ordered by a Chin's court. The timing of the placement evaluations, you know, the six months and the 12 months, those are statutory, those can be done by the Chin's court if they need to be soon. So there's nothing here. You're telling us, though, that if the Chin's court thought in the case of a particular child that every three months was a better schedule that the Chin's court could do that? I think so, yes. But there is, and the plaintiffs are raising systemic questions. Suppose the Chin's court says put this child in a home. The response is we don't have one that can deal with these disabilities or we're full up. What does the Chin's court do at that point?  Squeaky wheel kind of. Which is what does the Constitution require? And if the constitutional rights mandate a different placement, that can be evaluated in the Chin's court and in the state courts, the same as in a federal court. The capacity to comply with the order in the injunction may be a different question, but it's always going to be. There's no greater, better authority for the federal courts to order that than the Chin's court and the state judiciary. All right. Nothing further. Thank you very much. Appreciate it. Thank you very much. Thanks to both counsel. The case is taken under advisement.